I want to concentrate initially on the issue of the statute of limitations. Similar to the prior case, ours is totally different. We have weddings, we have correspondence confirming exclusivity, and we have a decision by the district court ruling that the Medina claim of the exclusivity in its declaratory judgment complaint is barred by the statute of limitations based on two grounds. First, a letter of January 26, 2006, written by Mr. Gary Ray, a very high executive in Hormel at the time. And second, by the fact that third parties were buying Hormel products outside Puerto Rico and reselling them in Puerto Rico. It would be very helpful to me if you could clarify something right up front. There was a lot of correspondence presented to the district court where your client did complain to Hormel about sales to Puerto Rico retailers by mainland distributors. You did complain about that a lot. But it appears to me when you filed your complaint, you decided you were not going to press that issue because that's, I think, what's called airtight exclusivity. When you filed your complaint, you decided to focus on a narrower version of exclusivity to the effect that your client should be the only seller, only distributor located in Puerto Rico that could sell these retail refrigerated products. And that seems to matter because the district court seemed to think that you were, despite the way you framed the complaint, you were asserting this wider version of exclusivity and that matters because this critical letter of January 21, 2006, it seemed to be your understanding at Hormel that that only dealt with the issue of so-called airtight exclusivity, not this narrower version. Is that a correlation? Let me try to focus on your question. First, when we file a complaint, we file a complaint based on two facts. First, Hormel directs sales to Costco in Puerto Rico of the party platters, which is in brief. And secondly, Hormel failed to honor giving Medina new products developed and accepted to be distributed in Puerto Rico, as has been the historical relationship between the parties. In the counterclaim for the regulatory judgment filed by Hormel, they raised and they asked the court, court, make a ruling that law 75 doesn't prohibit a distributor in the U.S. from buying in the U.S. and coming into Puerto Rico without having warehouse, without having offices, etc., just sending a sales people and selling the Hormel products in Puerto Rico. That was requested by Hormel, not by us. Okay? What the court did with that was the court said, oh, those sales and those letters that Mr. Medina sent complaining about those incidents triggered the statute of limitations. And in our brief, we say, no, as a matter of fact, we agree in that sense with Hormel, because Hormel says, relying on the Georgia case, law 75 doesn't prohibit a distributor in the U.S. who buys from Hormel in the U.S., let's say in New York, Florida, whatever, and ships them to Puerto Rico. That doesn't prohibit, law 75 doesn't prohibit that, because law 75 doesn't have an extraterritorial effect. Okay? But nevertheless, the judge, and we agree with that interpretation, and we didn't request that ruling. It was Hormel. The judge didn't decide that Hormel's request that it ruled on that specific question, but it used those letters as evidence that the statute of limitations had been triggered. Frankly, the law on that subject, whether law 75 prohibits or not that to happen, is extremely confusing. If you ask three attorneys who practice law 75 in Puerto Rico, you will get three different opinions. And as a matter of fact, you have two district courts' opinions, which are totally incontroversy. The Georgia case in New Jersey, the district court said, law 75 doesn't have an extraterritorial effect. It doesn't prohibit someone in the States to buy the product and sell it in Puerto Rico, even if you have a distributor there. That is not even an impairment. That's the Georgia case. On the other hand, we have the Costco case, which is much before, intimating that if you have that situation, you can write to the principal and say, listen, I am receiving products in Puerto Rico from such and such a distributor. Stop that. Okay? But there's no clear case law in that sense. So if there is no clear law in that sense, how can then the court say, Mr. Medina, you, a reasonable businessman, should have realized that the statute of limitations was being triggered? If we apply the decision of Judge Torruegas in the case of Wilson-Torres v. DuPont and the two tests that it's mentioned in that decision, none of them are met, really. Not a reasonable businessman can figure out whether those sales by outside distributors in Puerto Rico will trigger the statute of limitations on law 75. Did I answer your question? Yes. Doesn't the record indicate that the author of that letter by Hormel, he himself acknowledged during the course of discovery that that letter did not address any contention that your client was the exclusive distributor located here in Puerto Rico for the Hormel refrigerated products? He was putting to rest any notion that you could prevent Hormel from selling to distributors in the mainland who then would sell to Puerto Rico. That's what he was talking about, and your client understood that that's what he was talking about. Exactly. As a matter of fact, when I confronted him in the deposition with the letter, and I told him, tell me one, two, three distributors in Puerto Rico who sell Hormel products, buy from Hormel and resell them in Puerto Rico. And he told me, and he answered, and that is in the record. No, no, no, I'm not referring to that. I'm referring to people who buy in the U.S., third parties, and then resell in Puerto Rico. So you filed this lawsuit only when Hormel was prepared to repudiate the exclusive relationship that you felt you had to be the only distributor here in Puerto Rico for the Hormel products. Yes. Allow me for a moment. Prior to the 2006 letter that you are referring to, the same individual, Gary Ray, wrote letters in 2004 and 2005. And I will quote from the letters. This is Gary Ray saying, Letter of September 1st, 2004. All of this is in the record. Medina is the sole distributor in Puerto Rico authorized to service Indiglass and Hormel replacement areas of delis located within retail stores and club accounts who take possession of their products in Puerto Rico. Ray's letter, September 16, 2004. We totally agree you have exclusive for the deli. Letter of Mr. Ray, the same guy, June 22, 2005. We made it clear to our distributors, referring obviously to food service, CFS Hormel's broker in Puerto Rico and our people that the retail market is your venue. General Counsel for Hormel, July 12, 2005. Hormel has no other retail distributor in the island of Puerto Rico. And if you read the, I'm sure you have done, the record, you will see all of the top echelons of management of Hormel consistently testifying that before 2006, July 2006, and January 2006, and up to 2009, Medina was the sole and exclusive distributor of retail refrigerated products and fresh pork in Puerto Rico. Why did we decide to file a complaint? Because at one point in time, without Medina knowing, Medina had developed the market for the party platter for the Costco stores in Puerto Rico in 2002. And then in 2008, all of a sudden, Medina is informed that Hormel is selling a party platter developed to Costco directly in Puerto Rico, and that's when we filed the complaint. The original complaint was filed because of that reason. The principal selling, after all those letters, after the way of dealing for many years, and now it was selling directly. That was why we filed the complaint. And I think my time is over? Yes. Thank you, sir. Please, the court. Luis Oliver on behalf of Hormel Foods Corporation. Your Honor, here again we have the issue of the statute of limitations based on basic control acts. Here again, there's correspondence between the parties. Let me backtrack just a minute to start with what the allegation was regarding exclusivity in this case. In this case, Mr. Medina testified that in 1988 at a dinner party, Mr. Jim DeNicola of Hormel told him, go ahead, Pepin, you go ahead and distribute the Hormel product. And from that single statement, Mr. Medina understood that he had been granted an exclusive right to distribute in Puerto Rico retail refrigerator products, food service products, and fresh pork. The reality is that commencing immediately after 1988, between 1989 forward, there's 15 years of correspondence between the parties with a plethora of complaints from Mr. Pepin Medina, who is by all accounts a prolific writer, complaining repeatedly of numerous instances of sales by U.S. distributors, jobbers, complaining of retailers from Puerto Rico buying product in the U.S. None of these complaints, none of that correspondence for 15 years contains any claim of exclusive rights. None of it. In 2004, in 2008 between... Excuse me, what do you mean by exclusive rights? What I mean is that in none of those letters from Mr. Medina, he says, you cannot, you Hormel cannot sell or you have to do something with those distributors and you cannot sell to retailers because I have distributors. Distributors on the mainland? There were distributors on the mainland mostly, yes. Yes. But there were retailers here that were buying directly. So in 15 years, he never raised, wait a minute, I have exclusive rights, this is an impairment on my exclusive rights, which is what he's saying now. 15 years, none at all. In 2001, there was a Hormel appointed additional local distributors, Puerto Rico distributors for its food service products. Remember, Mr. Medina said that that was part of the exclusivity that he was granting in 1988. Wait a minute, but their complaint doesn't go to food service products, it only goes to these refrigerated retail products and the pork. That's exactly what... You're impugning to them a version of exclusivity that they did not assert. How can you do that? But wait a minute, they are asserting exclusive rights thereafter, not for the first 15 years of the relationship, the first time that they raised the issue of exclusivity to try to prevent sales by Hormel to retailers or wholesalers was in 2005. And it is that correspondence that triggers the statute of limitations issue on their basic controls because in July of 2005, in response to a letter from Mr. Medina saying, upon further review and consideration, I now think that your sales to wholesalers and retailers constitutes an impairment of my exclusive rights and you need to stop it. In response to that letter, Hormel says, we don't recognize that right. We don't think you, in 2005, gives you any right to stop our sales to wholesalers or retailers and we're going to continue doing that. That's a letter from July 2005 and a subsequent letter in August 2005 as well. Was it July 5th letter? I believe so, your honor. They wrote that Medina, through counsel, asked Hormel to confirm, quote, Medina and Medina as Hormel's exclusive retail distributor is the sole entity authorized to solicit and quote and or sell Hormel products to any and all retail accounts within Puerto Rico, to which your, I don't know if it was you, but it says Hormel counsel simply states, quote, Hormel has no other retail distributor on the island of Puerto Rico. What does one to understand that to mean from the question that was asked? Okay. We're referring to two different sets of correspondence. The letters that I referred to in July 2005 are in response to Mr. Medina's complaint, not his counsel, Mr. Medina's complaint to Hormel executives that upon further review, he thinks the sales by Hormel to wholesalers and retailers who are selling in Puerto Rico constitute an impairment. The letter that your honor just read is part of a series of letters exchanged, first between Pepin Medina and Mr. Gary Ray, which counsel referred to, which continue and eventually become letters between counsel for both parties. Regarding the issue of the, what triggered that particular issue was that food service distributors were selling into the cafeteria sections of supermarkets in Puerto Rico. And Mr. Medina raised that as one of his complaints. This detonated a series of correspondence that eventually culminated in correspondence between the lawyers in trying to bridge the chasm in their respective understanding of what their respective rights and obligations were. And as Mr. Medina testified, I acknowledge that was never resolved because as you see from that exchange that you just mentioned, counsel proposed one language and counsel for Hormel said this is the language that I proposed and there was never any agreement. And that's testimony from Mr. Medina himself acknowledging that's an issue related to food service in the deli and it was never resolved. So in our estimation, the error committed by the court here was that despite the fact that the district court acknowledged that there was a statute of limitations time bar in this particular case, despite the fact that the opinion order purports not to make a determination on the exclusivity or the scope of any exclusive rights claim by Medina, the court nevertheless imposed liability on Hormel for sales to Costco, for U.S. sales from Hormel to Costco Southeast in Atlanta because Costco Southeast division sold some of that product through its Puerto Rico stores which formed part of Costco Southeast. We submit this was clear error. We submit that the written evidence on record does not serve to corroborate any exclusive rights and that was the declaration that we sought in the counterclaim. Or at the very least, does not support a finding that exclusive rights extend to allow Mr. Medina and his company to prohibit sales by Hormel to Costco Southeast in the U.S. even if some of that product reaches Costco's Puerto Rico stores. I thought the findings of the district court were essentially that with respect to these party platters that it was Medina that saw the potential for that item here in Puerto Rico and it took the initiative in selling that product directly to retail outlets here that proved to be a very successful initiative and then your client seeing how successful it was decided after a number of years after Medina had developed that line decided to bypass Medina and to then sell directly to Costco. We're talking about a business relationship with Costco. I mean that sounds like the classic situation that Law 75 is designed to avoid. They invest time and money in developing a market for that particular product. Your client sees how successful it is and decides we're going to bypass the distributor now and sell directly. And that's what the district court found. That was sort of apart from the other issue of exclusivity, that was a special exclusive arrangement. And that's what the district court found. What's wrong with its findings? Two things. First of all, the Supreme Party platter was a new product, a newly developed product developed in conjunction between Hormel and Costco. It wasn't the party platters that Mr. Medina sold. May I finish? Yes, please. The party platters that Mr. Medina sold were different items. This was a wholly new item. But even beyond that, most importantly, and this goes to I think the crux of counsel's argument in this case, is that if you are the sole or single distributor in Puerto Rico, that automatically entitles you to exclusive rights. That's the essential claim in this case by Mr. Medina. Now, this court in Vulcan Tools addressed that very issue and said no, no. That is not so. If you can have a non-exclusive relationship with a distributor, and if within the context of such a relationship, the principal decides to either appoint somebody else or sell direct, then of course that's going to have an impact on the sales of the existing distributor. But that doesn't mean that it's actionable under Law 35 unless you have that kind of exclusive right. And that's what the court declined to make a determination on, which was error. And that's why what we're arguing, the record does not support any kind of exclusive rights. Certainly no such rights appear on this record that were ever awarded that would preclude sales or limit Hormel sales to Costco Southeast in Atlanta. Thank you.